**COMMONWEALTH of Kentucky, Appellant,**

v.

**Jerry S. MINIX, Appellee.**

**No. 98–SC–0778–DG.**

Supreme Court of Kentucky.

Sept. 23, 1999.

Discretionary Review Granted by Supreme Feb. 10, 1999.

722

A.B. Chandler, III, Attorney General, Frankfort, J. Scott Preston, J. Kevin Holbrook, Preston & Holbrook, Paintsville, for Appellant.

John C. Collins, Collins & Allen, Salyersville, for Appellee.

GRAVES, Justice.

In May 1996, a Paintsville City Police Officer stopped Appellee, Jerry Minix, for running a stop sign. The officer suspected that Minix was under the influence of alcohol and requested that he perform several field sobriety tests. In addition, the officer made two attempts to administer a preliminary breath test (PBT); however the instrument failed both times. Based upon the officer's observation of Minix's performance of the sobriety tests, the obvious odor of alcohol, and Minix's erratic driving behavior, Minix was arrested for driving under the influence (DUI) and taken to the Johnson County Detention Cen-

ter. After arriving at the center, Minix refused three times to submit to a breath test using the Intoxilizer 5000 machine. Instead, Minix requested that he be taken to the local hospital for a blood test. Since he had declined to take the breath test, the officer refused to transport Minix to the hospital.

Minix was subsequently charged with DUI second offense, disregarding a stop sign, and disorderly conduct. Minix pled guilty to the disregarding a stop sign and disorderly conduct charges, but moved the Johnson District Court to suppress all evidence of his intoxication because of the officer's refusal to honor his request for a blood test. Minix also moved to dismiss the DUI charge on the grounds that there was insufficient evidence of his guilt. The district court granted both motions. The Johnson Circuit Court affirmed the dismissal, stating that under KRS 189A.103(7), Minix "was entitled to a test of his own choosing and the officer could not refuse the driver his right to the test once the driver [had] submitted to the preliminary breath test." The Court of Appeals affirmed the circuit court's judgment regarding Minix's right to his own test, but vacated and remanded that part of the judgment which suppressed all other evidence of Minix's intoxication and dismissed the charge. This Court subsequently granted discretionary review. After hearing oral arguments and reviewing the record, we reverse the decision of the Court of Appeals.

The sole issue presented in the case is when a driver suspected of driving under the influence is entitled to a blood or urine test of his own choosing. Appellant, the Commonwealth, contends that a driver must first submit to all tests requested by the officer before he is entitled to an independent test. Minix, on the other hand, argues that once he consented to the preliminary tests, although they were unsuccessful, he was entitled to his own test.

■ KRS 189A.103 is based on the public policy that an individual driving on the highways of Kentucky has given implied consent to the performance of breath, blood, and/or urine tests in the event that the individual is suspected of driving a vehicle under the influence. *See Beach v. Commonwealth*, Ky., 927 S.W.2d 826 (1996). KRS 189A .103 provides, in pertinent part, as follows:

> The following provisions shall apply to any person who operates or is in physical control of a motor vehicle or a vehicle that is not a motor vehicle in this Commonwealth:
>
> (1) He is deemed to have given his consent to one (1) or more tests of his blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration or presence of a substance which may impair one's driving ability, if arrested for any offense arising out of a violation of KRS 189A.010(1) or 189.520(1).
>
> (7) The person tested shall be permitted to have a person listed in subsection (6) of this section of his own choosing administer a test or tests in addition to any tests administered at the direction of the peace officer. Tests conducted under this section shall be conducted within a reasonable length of time.

■ Subsection (1) is the informed consent statute which states that an individual has deemed to consent to testing in the event that he or she is suspected of operating a vehicle under the influence of any substance which could impair driving ability. Subsection (7) provides that once the individual has consented to the officer's request for "one (1) or more tests," that individual is then entitled to an independent test of his choosing. In reading the two subsections together, it is plain that the individual must first consent to the test or tests requested by the officer. Undoubtedly, the language of subsection (1) requires an individual to comply with the officer's request not only in the field following the initial stop, but certainly his request to administer a post-arrest test

utilizing the Intoxilizer 5000 breath machine. Only after an individual has complied, is he or she entitled to an independent test.

 Moreover, we are of the opinion that the language of subsection (7) contemplates that the individual has submitted to a valid first test before the right to an independent test arises. The purpose of allowing an accused an independent test is to obtain another result to compare with or controvert the police officer's test. If there is not any determination of alcohol concentration from the administration of a successful post-arrest test, there is no statutory entitlement to an independent test. This is analogous to obtaining a second opinion of a medical diagnosis. There can be no second opinion unless and until a first opinion has been rendered. In other words, the accused has not been "tested" within the meaning of subsection (1) until there has been an actual determination of alcohol concentration or presence of a substance which impairs driving ability. We can find no indication that the Legislature intended to provide a driver with the right to receive independent testing in the absence of an official test which could be used for prosecution purposes.

In this case, Minix did submit to the two unsuccessful attempts to obtain results from the preliminary breath test. However, once he was arrested and transported to the detention center, Minix chose not to comply with the officer's request to a test using the Intoxilizer 5000 machine. At that point, Minix waived his right to his own test. Since the Commonwealth did not obtain any test result that determined alcohol concentration, an independent test was not warranted. As our predecessor Court stated in *Newman v. Hacker*, Ky., 530 S.W.2d 376, 377 (1975), in construing the then KRS 189.520(8), the statute "contemplates a test in addition to a test administered by the police officers and when the test requested ... is refused the section is not applicable."

We conclude that the district court, circuit court, and Court of Appeals erred in finding that Minix had been tested in accordance with the language of KRS 189A.103. Moreover, it was error for the district and circuit courts to suppress other evidence of Minix's intoxication. Accordingly, we reverse the Court of Appeals on the issue of entitlement of independent testing, however, we affirm the Court of Appeals decision that other evidence of intoxication was admissible. This matter is therefore remanded to the Johnson District Court for trial in accordance with this opinion.

LAMBERT, C.J., GRAVES, JOHNSTONE, KELLER, STUMBO, and WINTERSHEIMER, J.J. concur.

COOPER, J., concurs in result only.